### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY CELLUCCI, JESUS ALBERTO MATIENZO, LEE MWAURA NJERI, JASON BOTELHO, JOSE MANUEL CUEVAS, RUDEIDAMIA A. CALCANO, AND STEPHANIE NUNES MARTINS, <br><br> Plaintiffs, <br><br> v. <br><br> FOSTER GARVEY, ROBERT C. WEAVER, SAMUEL KAUFFMAN, SARA SANDFORD, AND GARY TOBER, <br><br> Defendants. | CIVIL ACTION NO.  4:23-10304-TSH |

## ORDER AND MEMORANDUM ON DEFENDANTS' MOTION TO DISMISS (Docket No. 17)[1]

### 7/19/2023

**HILLMAN, S.D.J.**

Anthony Cellucci, Jesus Alberto Matienzo, Lee Mwaura Njeri, Jason Botelho, Jose Manuel Cuevas, Rudeidamia A. Calcano, and Stephanie Nunes Martins (collectively "plaintiffs") brought aiding and abetting and "concerted action" conspiracy claims against the Foster Garvey law firm as well as several employees of that law firm, including Robert C. Weaver, Samuel Kauffman, Sara Sandford, and Gary Tober (collectively "defendants") for actions taken between 2013 and 2014 in their representation of TelexFree, which ran a fraudulent Ponzi scheme.

---

[1] Unless otherwise indicated, the docket numbers refer to 23-cv-10304, not 14-md-02566. This order is docketed in 23-cv-10304 because the entries predated the consolidation of the case for pretrial purposes. Parties should continue to use the 14-md-02566 docket for pretrial filings.

Defendants move to dismiss the claims for failure to state a claim. For the reasons below, the defendants' motion is ***granted***.

## Background

After one of the plaintiffs filed a near-identical suit in Massachusetts, the defendants in this litigation were dismissed for lack of personal jurisdiction on August 31, 2022. (14-md-02566, Docket No. 1418, at 32-35). On September 16, 2022 the plaintiffs filed a complaint in the Western District of Washington, which was amended on November 7, 2022, and the defendants moved to dismiss for failure to state a claim. (Docket No. 17). The case was then transferred to this Court pursuant to the order of the Judicial Panel on Multidistrict Litigation. (Docket No. 20).

The factual background for this case can be found in this Court's order dismissing the defendants for lack of personal jurisdiction. (14-md-02566, Docket No. 1418, at 30-32). The defendants are lawyers whose services to TelexFree were coordinated by Jeffrey Babener ("Babener,"), an associate of TelexFree whose estate is a co-defendant in this case. The facts alleged in the complaints in both actions are identical in all relevant respects with one exception. Here, the plaintiffs have added the allegation that "[u]pon information and belief, Merrill utilized the Grand Cayman TelexFree entity to remove funds from U.S. regulatory jurisdiction." (Docket No. 15, at ¶ 215). Although the defendants attach documents to their opposition, this Court finds that they do not contradict the allegations of the plaintiffs and are therefore irrelevant.

## Standard of Review

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 45 (9th Cir. 2022). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

<u>**Analysis**</u>

*1.   Choice of Law*

The primary dispute between the parties at this juncture is whether Massachusetts or Washington law applies. The plaintiffs assert Massachusetts law applies, while the defendants assert Washington law applies. Because this case was transferred from Washington, this Court must conduct the choice of law analysis as if it were siting in Washington. *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4, 17 (1st Cir. 2012). In Washington, the first step in a choice of law analysis is to determine if there is a conflict between the state's substantive laws. Second, courts determine which jurisdiction has the most significant relationship to the litigation. Finally, if the contacts are evenly balanced, the court considers public policy. *Woodward v. Taylor*, 184 Wash. 2d 911, 917-19, 366 P.3d 432, 435-36 (2016). Because this Court finds that there is no conflict, Washington law applies and the other prongs of the analysis are irrelevant. *Id.* at 917, 435 ("If there is no actual conflict, the law of the forum applies and the court does not reach the most significant relationship test").

In determining whether the law of two jurisdictions conflict, Washington courts consider whether the "outcome" of the litigation would be different depending on the jurisdiction, not merely whether there are differences in the substantive law. *Id.* at 920, 436-37. For instance, where a negligence claim turned on whether a driver was driving too fast for the conditions in question, the fact that two states had different speed limits was not considered important enough to create a conflict of laws. *Id.* at 921-922, 437. And where it was "almost inconceivable that a jury could assign more fault to" the plaintiff, actual differences in comparative fault regimes

failed to create a conflict because the outcome would not be different. *Id.* at 922-23, 437-38. Similarly, "potential" differences in law that could have been raised but were not asserted in the complaint cannot create conflicts. *Id.* at 920, 436 n. 4.

### a. Aiding and Abetting in Washington and Massachusetts

Washington courts typically use different labels than Massachusetts courts in describing aiding and abetting claims. Because the analysis turns on whether the differing laws lead to a different outcome, those superficial differences do not create a conflict between the jurisdictions.

Washington recognizes aiding and abetting liability. *Cain v. Dougherty*, 54 Wash. 2d 466, 471, 341 P.2d 879, 881 (1959); *Thomas v. Casey*, 49 Wash. 2d 14, 17, 297 P.2d 614, 616 (1956); *see also Halverson v. Skagit Cnty.*, 139 Wash. 2d 1, 11, 983 P.2d 643, 649 (1999) (although the court rejected aiding and abetting liability as applied to takings challenges, the theory is familiar in Washington courts). When discussing aiding and abetting claims Washington courts reference the Restatement (First) of Torts § 876 (1939).[2] That sets out three theories of liability, the second of which—"knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself"—is comparable to Massachusetts' approach, which requires actual knowledge of a primary tort and substantial assistance of that tort. *See, e.g.*, *In re TelexFree Sec. Litig.*, 358 F. Supp. 3d 112, 116 (D. Mass. 2019). Plaintiffs point to the first theory of liability in Section 876 of the Restatement and argue *that* is the only theory of aiding and abetting liability recognized in Washington. Restatement (Second) of Torts § 876 (a) ("[D]oes a tortious act in concert with the other pursuant to a common design with him"). That is incorrect. And that Washington might recognize more forms of liability than Massachusetts does not create a conflict because plaintiffs have only

---

[2] The language used by the trial court in *Halverson* mirrors the Second Restatement, suggesting that Washington Courts have simply adopted the Second Restatement. In any case, the language in the "substantial assistance" prong has not changed between Restatements.

pleaded a "substantial assistance" aiding and abetting claim—the analysis is identical regardless of the jurisdiction.

Plaintiffs argue that they are also pleading a "concerted action" conspiracy, which is not recognized in Washington. Because a "conspiracy" claim in Washington focuses on "agreement," the plaintiffs argue there is a conflict between Washington and Massachusetts law. However, the elements for a "concerted action" conspiracy in Massachusetts are identical to those for a "substantial assistance" aiding and abetting claim. *In re TelexFree Sec. Litig.*, 358 F. Supp. 3d at 116 (citing *Go Best Assets v. Citizens Bank*, 463 Mass 50, 64, 972 N.E.2d 426, 437-38 (2012) for aiding and abetting and *Kirker v. Hill*, 44 Mass. App. Ct. 184, 189 (1998) for a "concerted action" conspiracy). Plaintiffs cannot create a conflict by pleading the same theory of liability under two different labels. A Washington court would not apply the agreement conspiracy doctrine because that is not the claim the plaintiffs pleaded. *Cf. Woodward*, 184 Wash. At 920, 366 P.3d at 436 n. 4. It would either dismiss the claim, as Washington does not recognize a "concerted action" conspiracy, or consider the claims to be identical. But the outcome of the litigation would turn on the same two prongs, regardless of the jurisdiction: actual knowledge of a primary tort and substantial assistance of that tort.

### b. *Routine Services*

The defendants identify a case (in their privilege section, even though the case is not about privilege) holding that the provision of "routine professional services" cannot create liability under a "substantial factor" test. *Hines v. Data Line Systems, Inc.*, 114 Wn.2d 127, 149, 787 P.2d 8, 20 (1990). They argue that, if such a limitation applies to aiding and abetting liability, it limits their liability, and if it does not exist, there is no conflict between Washington

and Massachusetts. This Court concludes such a doctrine likely exists in Washington, but because it does not apply to the defendants, it does not create a conflict of law.

It seems likely Washington courts would apply the "routine services" limitation to aiding and abetting liability involving professionals. The assistance in an aiding and abetting claim must be a "substantial factor" in the commission of the primary tort. Restatement (Second) of Torts § 876(b). The same reasoning animating the Court in *Hines* would apply here: there must be "something more" than routine services for liability to attach. A similar limitation exists in Massachusetts law regarding banking services. *Cf. Mansor v. JPMorgan Chase Bank, N.A.*, 183 F. Supp. 3d 250, 269 (D. Mass. 2016). However, it is not clear Massachusetts recognizes a similar limitation on aiding and abetting liability for professional services. *Cf. Spinner v. Nutt*, 417 Mass. 549, 556, 631 N.E.2d 542, 546 (1994) ("[a]n allegation that the trustees acted under the legal advice of the defendants, without more, is insufficient to give rise to a claim that an attorney is responsible to third persons for the fraudulent acts of his clients."). Assuming that Massachusetts would not recognize such a limitation, *Woodward* requires the conflict to create a difference in the outcome *of this case*. Addressing the viable claims against defendants in this litigation, it does not. Therefore, this Court need not decide whether Massachusetts would recognize the routine services limitation as applied to professionals.

As an initial matter, advice that was not acted upon cannot amount to substantial assistance. In both Washington and Massachusetts, there must be a causal connection between the substantial assistance and the harm suffered by the plaintiffs. Therefore, this Court only reviews the allegations in the complaint that conceivably meet this bar.

The plaintiffs allege that, in October 2013, Spanish authorities reached out to TelexFree based on a complaint from a local promoter. Babener noted in a communication to Sandford and

Tober that it was important to nip the investigation in the bud so as to not attract the attention of "Interpol, FBI, Justice and SEC." Babener also indicated he wanted Kauffman to be the "contact" for the investigation. On October 10, 2013, Kauffman misrepresented the nature of the business to the Spanish authorities, insisting that "Telexfree provides VOIP long distance flat fee telecom service throughout the world. At any one time, the company has tens of thousands of customers using its telecom service. The product is marketed through its sales force." The plaintiffs allege that "Kauffman knew that Telexfree services were not Voip but purchases of AdCentral packages where promoters cut and paste ads to TelexFree websites." Plaintiffs have plausibly alleged that Kauffman lied to authorities on behalf of a client he knew to be committing a fraud in order to allow that fraud to continue uninvestigated. That is distinct from making *legal* arguments in defense of his client. This is not an allegation of "routine" lawyering.

The plaintiffs allege that in March 2014 Weaver drafted a misleading letter for Babener to send to TelexFree banking partners, particularly Wells Fargo, to persuade them to continue servicing TelexFree accounts. Following receipt of this letter, Wells Fargo continued servicing TelexFree accounts. Like the actions of Kauffman, lying to and misleading third parties is not part of routine legal services.

The plaintiffs allege that Sandford and Tober helped create an entity in the Cayman Islands between January and March 2014, allegedly to remove funds from U.S. regulatory jurisdiction. Similarly, the plaintiffs allege that, at Tober's direction, Cardenas (a Wells Fargo defendant) opened an account in Nevis, and that "Merrill utilized the Nevis TelexFree entity to remove funds from U.S. regulatory jurisdiction." It is less clear this meets the "causal" requirement discussed above. But for the purposes of this analysis, it is sufficient to say that restructuring a client's assets so that the client will avoid paying criminal and civil judgments

when the lawyer knows the assets were obtained by fraudulent means are not routine legal services.

Because none of the viable allegations consist of routine legal services, the possible limitation of aiding and abetting liability for routine professional services in Washington law does not affect the outcome of this litigation even if Massachusetts does not recognize such a limitation. In either jurisdiction, the plaintiffs have stated viable claims against the defendants. However, that also means there is no conflict.

### c.   Privileges

Defendants argue that there are two privileges applicable to Washington that do not exist in Massachusetts. (And alternately, if such privilege does not exist, there is no conflict of law). This Court finds that these privileges do not exist and therefore do not create a conflict. First, defendants argue that Washington would adopt Oregon's general privilege for lawyers against claims relating to a lawyer's representation of a primary tortfeasor. *Reynolds v. Schrock*, 341 Or. 338, 353-54, 142 P.3d 1062, 1170-71 (2006). That privilege applies unless "the lawyer's conduct [falls] outside the permissible scope of the lawyer-client relationship." *Id.* Given the analysis above, it is not clear the defendants could invoke that privilege. Regardless, Washington already recognizes a much narrower "judicial action privilege" which only "bars a plaintiff from suing an *adversary's* attorney for actions the attorney took *in the course of litigation.*" *Hoffman v. Transworld Sys. Inc.*, No. C18-1132 TSZ, 2022 WL 18109301, at *2 (W.D. Wash. Sept. 26, 2022) (emphasis added). And that narrower privilege does not apply when doing so would "neither preserve the integrity of the judicial process nor further the administration of justice." *Id.* at *3 (citation omitted). This is strong evidence that Washington would not adopt the *Schrock* privilege. Doing so would entail ending the judicial action privilege and the defendants cite no

case law indicating judicial dissatisfaction with the existing, narrower privilege in Washington. Instead, they cite non-applicable cases involving malpractice liability.

The defendants also argue that as agents of their clients they cannot conspire with them under the doctrine that agents cannot conspire with their principals, those acts being privileged. First, because there is no "agreement" conspiracy alleged, it is not clear the inability of agents to conspire with principals is even implicated. In any case, defendants are only able to locate Washington case law holding that "the attorney-client relationship is generally a type of principal-agent relationship." *West v. Thurston Cnty.*, 168 Wn. App. 162, 183, 275 P.3d 1200, 1212 (2012). The other in-state cases defendants cite concern situations where both the plaintiff and the defendants are employees of the same corporation, and the plaintiff is trying to hold the defendant liable for inducing the corporation to tortiously interfere with contractual relations— that is inapplicable here. Defendants rely heavily on out-of-state law. Without in-state precedent suggesting that agents cannot be held liable for giving knowing substantial assistance to principals in the commission of torts this Court will not imply such a privilege. Therefore, there are no relevant differences in privilege that create a conflict between Washington and Massachusetts law as they apply to these allegations.

### d. Procedural Law

In Washington, differences in procedural laws do not create a conflict for choice of law purposes, and statutes of limitation are considered procedural, not substantive. *Rice v. Dow Chem. Co.*, 124 Wash. 2d 205, 210-11, 875 P.2d 1213, 1216 (1994). However, if another state's substantive law controls after a choice of law analysis, that state's statutes of limitation apply. *Id.* The parties agree that Massachusetts has a "savings statute" that allows for untimely claims to be

refiled if they are dismissed for matters of "form," M.G.L. c. 260 § 21,[3] and that there is no parallel law in Washington. The plaintiffs assume this difference creates a conflict, but they do not cite any precedent nor do they address the distinction between substance and procedure. Defendants argue that savings statues are statutes of limitation and therefore procedural.

There is no case directly on point in Washington and other jurisdictions are split on this question. However, courts that have assumed that savings statues create a conflict for choice of law purposes have done so without addressing the distinction between substance and procedure. *Stoltz v. Fry Foods, Inc.*, 60 F. Supp. 3d 1132, 1141 (D. Idaho 2014); *Pulido v. United Parcel Serv. Gen. Servs. Co.*, 31 F. Supp. 2d 809, 815-16 (D. Or. 1998). In contrast, Courts that have considered the distinction between substance and procedure have found savings statutes to be statutes of limitation and procedural. *Paulsen v. Abbott Lab'ys*, No. 15-CV-4144, 2018 WL 1508532, at *11 n. 13 (N.D. Ill. Mar. 27, 2018); *McKinney v. Fairchild Int'l, Inc.*, 199 W. Va. 718, 728, 487 S.E.2d 913, 923 (1997); *Smith v. Bell Sports, Inc.*, 934 F. Supp. 70, 73-74 (W.D.N.Y. 1996).

This Court finds savings statutes to be statutes of limitation and therefore procedural. Washington courts have contrasted statutes of limitation, which "bar[] plaintiff[s] from bringing an *already accrued* claim after a specified period of time" with "statutes of repose," which "terminate[] a right of action after a specific time, even if the injury has not yet occurred." *Rice*, 124 Wash. 2d at 211-12, 875 P.2d at 1216-17 (emphasis added). The former are procedural rules governing when claims can be brought, whereas the latter are substantive laws that define the elements of the claim itself. Savings statutes are not part of the elements of a claim, but merely an exception to the standard statute of limitation. They do not terminate the right after a specific

---

[3] This includes dismissals for lack of personal jurisdiction. *Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC*, 84 Mass. App. Ct. 75, 89, 993 N.E.2d 350, 362–63 (2013).

time unrelated to the injury, but merely extend the statute of limitations in certain circumstances. Therefore, they are procedural, not substantive.

This holding is buttressed by a consensus that equitable tolling rules are procedural. *See, e.g.*, *Wellin v. Wellin*, No. 2:13-CV-01831-DCN, 2020 WL 95683, at *2 n. 3 (D.S.C. Jan. 8, 2020); *Daisley v. FedEx Ground Package Sys., Inc.*, 376 F. App'x 80, 81 (2d Cir. 2010); *Everwine v. Nemours Found.*, No. CIV.A. 05-3004, 2006 WL 891060, at *3 (E.D. Pa. Apr. 4, 2006). Equitable tolling functions identically to a savings statute, but on a case-by-case basis. There is no reason to consider savings statutes substantive if equitable tolling rules are procedural. Both are simply exceptions to the statute of limitations. And therefore, any differences between equitable tolling in Massachusetts and Washington also do not present a conflict of law. Because there is no difference in substantive law, Washington law—procedural and substantive—applies.

### 2. *Timeliness*

This claim was filed on September 9, 2022 and Washington has a three-year statute of limitations that begins to toll when the plaintiff knew or should have known of the facts that establish their cause of action. *Huff v. Roach*, 125 Wn. App. 724, 729, 106 P.3d 268 (2005). Because the initial claim was filed in Massachusetts in June 2017 there is no question that the 2022 filing is untimely absent some exception to the statute of limitation.

Washington does not have a savings statute. Its equitable tolling doctrine is strictly applied, and requires a showing that "the defendant's bad faith, false assurances, or deception interfered with the plaintiff's timely filing." *Fowler v. Guerin*, 200 Wn.2d 110, 125, 515 P.3d 502, 509 (2022). The plaintiffs cannot and do not attempt to make that showing here, instead pointing to a stay in the Multi-District TelexFree litigation from 2016 to January 29, 2019. (14-

md-02566, Docket Nos. 414, 608). Even if the Court did not count the time during the stay toward the statute of limitations (the plaintiffs point to no case law explaining why such an approach would be justified), more than three years still elapsed. As such, their claims are untimely. This may seem harsh, but it is not without precedent in Washington. *See, e.g.*, *Wallace v. Holden*, No. C20-5643 BHS, 2020 WL 6202736, at *2 (W.D. Wash. Oct. 22, 2020), *aff'd*, No. 20-35993, 2022 WL 421944 (9th Cir. Feb. 11, 2022). Having taken the risk of bringing suit in Massachusetts against defendants with little connection to the state, plaintiffs have lost the ability to bring suit at all.

### 3.  Disposition

Judgment will be entered in this case and the case will be terminated because all the claims against all the defendants in the case are dismissed. The operative complaint in this case was never consolidated with the Fifth Consolidated Amended Complaint ("5CAC") in the MDL docket, (14-md-02566), so there was no "merger." *Cf. Gelboim v. Bank of America*, 574 U.S. 405, 413 n. 3 (2015). Instead, the action instituted in in this case retained its "separate identit[y]." *Id.* at 413. As such, Fed. Rule Civ. Proc. 54(b) is not implicated by any remaining claims in the MDL docket. For the same reasons, this order does not affect the status of any defendants in the action instituted by the 5CAC in the MDL docket.

### <u>Conclusion</u>

For the reasons above, defendants' motion is ***<u>granted</u>***.


**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**SENIOR DISTRICT JUDGE**
